# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CAROLYN DENISE WILLIAMSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV00884 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Carolyn Denise Williamson, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 16 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 18, 21; see also Docket Entry 19 (Plaintiff's Memorandum), Docket Entry 22 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI, alleging a disability onset date of January 1, 2006. (Tr. 153-58.) Upon denial of that application initially (Tr. 65-77, 92-95) and on reconsideration (Tr. 78-91,

100-04), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 105). Prior to the hearing, Plaintiff amended her onset date to January 27, 2011. (Tr. 42, 43, 166.) Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 39-64.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 19-33.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6), thus making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since January 27, 2011, the application date.
>
> 2. [Plaintiff] has the following severe impairments: osteoarthritis; thyroid gland issue; and depression.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform less than the full range of light work . . . in that she [can] occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds as well as sit, stand, and walk about six hours out of [an] eight-hour workday. She could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl and should never climb ladders, ropes, or scaffolds. [Plaintiff] could occasionally be exposed to unprotected heights and moving mechanical parts with moderate exposure to noise. She would require a sit/stand option.

> The DOT does not address a sit/stand option; therefore, the undersigned defines it as allowing [Plaintiff] to stand up at [her] workstation and stretch for one to two minutes every half hour. She would be limited to simple, routine, and repetitive tasks and would not be able to perform at a production rate pace (e.g. assembly line work), but can perform goal oriented work (e.g. office cleaner). [Plaintiff] could frequently interact with supervisors, co-workers, and the public.
>
> . . .
>
> 5. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.
>
> . . .
>
> 10. [Plaintiff] has not been under a disability, as defined in the [] Act, since January 27, 2011, the date the application was filed.

(Tr. 24-32 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. The Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ erred by failing to find that Plaintiff's bilateral carpal tunnel syndrome ("CTS") and obesity qualified as severe impairments (see Docket Entry 19 at 10-14, 18-19);

(2) "the ALJ conducted a flawed RFC assessment by failing to address [Plaintiff's] manipulative limitations caused by her [CTS]" (id. at 14)

(3) "the ALJ presented a legally insufficient hypothetical to the VE resulting in a flawed step 5 finding that [Plaintiff] could adjust to other work" (id. at 16).

Defendant disputes all of Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 22 at 3-11.)

#### 1. Severe Impairments

Plaintiff contends the ALJ should have categorized her CTS and obesity as additional severe impairments at step two of the SEP. (See Docket Entry 19 at 10-14, 18-19.) With regard to CTS, Plaintiff faults the ALJ for failing to discuss Plaintiff's "diagnosis of [CTS] by several . . . medical providers," electromyography ("EMG") testing (which showed "mild to moderate bilateral median neuropathies at the wrists, consistent with the clinical diagnosis of [CTS]" (Tr. 466)), and records pertaining to

8

carpal tunnel release surgery on her left hand on July 31, 2012. (Docket Entry 19 at 12.) Plaintiff argues that, because the ALJ "clearly did not consider all the relevant evidence pertaining to [Plaintiff's] well-documented [CTS]," the reviewing court cannot ascertain whether the ALJ rejected Plaintiff's "allegations regarding her functional limitations from [CTS] . . . for no reason or an improper reason." (Id. at 13.) Concerning obesity, Plaintiff emphasizes that her body mass index ("BMI") remained in the "obese" range, varying from 31.4 to 33.9, during the time relevant to the ALJ's decision. (Id. at 18.)[5] Plaintiff challenges the ALJ's failure to "consider [Plaintiff's] obesity in conjunction with her right knee osteoarthritis, or [to] acknowledge that the combined effect of her obesity and osteoarthritis may be greater than the effect of each impairment individually." (Id. at 19 (citing Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, at *6 (Sept. 12, 2002) ("SSR 02-1p")).) Plaintiff's contentions ultimately do not warrant relief.

For purposes of step two, an impairment fails to qualify as "severe" if it constitutes only "a slight abnormality . . . that

---

[5] The National Institutes of Health's "guidelines classify overweight and obesity in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). For adults, both men and women, the [] [g]uidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, at *2 (Sept. 12, 2002) ("SSR 02-1p").

9

has no more than a <u>minimal effect</u> on the ability to do <u>basic work activities</u>." Social Security Ruling 96-3p, <u>Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe</u>, 1996 WL 374181, at *1 (July 2, 1996) (emphasis added) ("SSR 96-3p"). Applicable regulations further identify "basic work activities" as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

Plaintiff bears the burden of proving severity at step two. <u>Hunter</u>, 993 F.2d at 35; <u>see also</u> <u>Kirby v. Astrue</u>, 500 F.3d 705, 708 (8th Cir. 2007) ("<u>Severity</u> is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)). To carry that burden, Plaintiff "must provide <u>medical evidence</u> showing . . . an impairment(s) and <u>how severe it is</u> . . . ." 20 C.F.R. § 416.912(c) (emphasis added); <u>see also</u> Social Security Ruling 85-28, <u>Titles II and XVI: Medical</u>

10

Impairments that Are Not Severe, 1985 WL 56856, at *4 (1985) ("SSR 85-28") ("A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities . . . . At the second step of [the SEP], then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (emphasis added)); Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003) ("The step two severity determination is based on medical factors alone . . . ." (emphasis added)); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) ("A severe impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." (internal quotation marks omitted)); Flint v. Sullivan, 743 F. Supp. 777, 782 (D. Kan. 1990) ("A claimant's statements regarding the severity of an impairment are not sufficient."), aff'd, 951 F.2d 264 (10th Cir. 1991).

Here, the ALJ erred by not only failing to find that Plaintiff's CTS and obesity qualified as severe impairments, but by failing to find that those conditions constituted medically determinable impairments at all. (See Tr. 24.) Regarding Plaintiff's CTS, she presented diagnostic evidence in the form of

11

an EMG (see Tr. 466), as well as clinical findings such as positive Tinel's and Phalen's tests (see, e.g., Tr. 463, 595, 653), which confirmed she suffered from mild to moderate bilateral CTS. Moreover, Plaintiff's doctors detected reduced grip strength multiple times on examination (see, e.g., Tr. 463, 653, 679, 700, 705), which would likely have had "more than a minimal effect," SSR 96-3p, 1996 WL 374181, at *1, on Plaintiff's ability to lift, carry, push, pull, handle (gross manipulation), and finger (fine manipulation), see 20 C.F.R. § 416.921(b). Similarly, concerning obesity, the record demonstrates that Plaintiff's BMI remained in the "obese" range throughout the time relevant to the ALJ's decision (see, e.g., Tr. 44, 171, 454, 554), and that Plaintiff suffered from severe osteoarthritis in both knees (see Tr. 411, 418, 441, 535, 644, 673-74), which necessitated total knee replacement on the right (see Tr. 529-32). Given SSR 02-1p's express admonition that ALJs should carefully consider the combined effect of obesity and osteoarthritis, SSR 02-1p, 2002 WL , at *6, the ALJ's failure to find that Plaintiff even suffered from obesity (let alone severe obesity) constitutes error.

However, the ALJ's failure to categorize Plaintiff's CTS and obesity as severe impairments amounts to harmless error under the circumstances presented here. Where (as here) an ALJ concludes that a claimant suffers from at least one severe impairment (see Tr. 24 (finding severe Plaintiff's osteoarthritis, thyroid gland

12

issue, and depression)), any failure to categorize additional impairments as severe generally does not constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington, 698 F. Supp. 2d at 579; Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished).

Moreover, Plaintiff has not shown how the ALJ's proper categorization of her CTS and obesity as severe impairments at step two would have had any impact on the ALJ's ultimate conclusion that jobs existed in significant numbers in the national economy that Plaintiff could perform. As discussed in more detail below in conjunction with Plaintiff's second assignment of error, the ALJ included manipulative limitations in his hypothetical questions to the VE (see Tr. 60-62)(although not the RFC, (see Tr. 25-26)), and Plaintiff has not challenged the VE's testimony that jobs existed that accommodated those manipulative restrictions or otherwise shown that Plaintiff's CTS further limited her (see Docket Entry 19 at 10-19; see also Tr. 61-62). Nor has Plaintiff demonstrated that

13

her obesity, either considered alone or in combination with her bilateral knee osteoarthritis, caused limitations beyond those the ALJ included in the RFC and hypothetical questions. (See Docket Entry 19 at 18-19.) That failing precludes relief on that front. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (ruling remand for express consideration of obesity unnecessary where plaintiff failed to specify how her obesity would impact the ALJ's analysis); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (declaring no remand required where plaintiff failed to show, through objective evidence, "how his obesity further impaired his ability to work"); Miller v. Astrue, Civ. No. 2:06-00879, 2008 WL 759083, at *3 (S.D.W. Va. Mar. 19, 2008) (unpublished) (holding that, "where an explicit discussion of the claimant's obesity will not affect the outcome of the case, remand is inappropriate").

Given the foregoing circumstances, the Court should decline to remand based on Plaintiff's first assignment of error. See Morgan v. Barnhart, 142 F. App'x 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.")

## 2. RFC

Next, Plaintiff asserts that, "[a]s a direct result of failing to find that [Plaintiff's] [CTS] is a severe impairment at step two, the ALJ failed to properly evaluate [Plaintiff's] manipulative restrictions in his RFC finding." (Docket Entry 19 at 15.) Plaintiff acknowledges that the ALJ did include some manipulative limitations in his hypothetical question to the VE, but denies that this renders the ALJ's error harmless where "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" (Id. (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).) These assertions do not entitle Plaintiff to relief.

Although the ALJ did not include any manipulative restrictions in the RFC (see Tr. 25), such as limitations on reaching, handling, fingering, and feeling, he did include such limitations in his hypothetical questions to the VE (see Tr. 60-62). The ALJ's first hypothetical included all of the limitations in the RFC, plus a limitation to frequent (as opposed to constant) handling and fingering. (Compare Tr. 25, with Tr. 60.) In response, the VE testified that an individual with those limitations could perform the occupations of furniture rental clerk and routing clerk (see Tr. 61), and the ALJ adopted that testimony in his decision (see Tr. 32). Plaintiff neither elaborated on which "manipulative restrictions" the ALJ should have included in the RFC, nor

15

challenged the VE's testimony that jobs existed that could accommodate frequent handling and fingering. (See Docket Entry 19 at 14-15.)[6] As a result, any failure by the ALJ to include manipulative restrictions in the RFC amounts to harmless error. Fisher, 869 F.2d at 1057 ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

### 3. Hypothetical Question

Lastly, Plaintiff contends that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, or pace ("CPP") in the RFC. (Docket Entry 19 at 16.) Specifically, Plaintiff asserts that, under Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), "an ALJ does not account for a claimant's limitations in CPP by restricting the hypothetical question to simple, routine tasks or unskilled work." (Docket Entry 19 at 17.) According to Plaintiff, "[a] claimant's ability to do unskilled work says nothing about whether she has concentration lapses, or how frequently she has them." (Id.) Plaintiff's argument has merit and warrants remand.

---

[6] In the ALJ's second hypothetical, he kept all of the restrictions in the first hypothetical except that he reduced handling and fingering to only occasional rather than frequent. (See Tr. 61.) The VE responded that, even with occasional handling and fingering, the furniture rental clerk remained an available job. (Id.)

16

Indeed, the Mascio court expressly held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in concentration, persistence, or pace would not result in any limitation in the RFC. Id. A neighboring federal district court recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in concentration, persistence, or pace, where ALJ relied

17

on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities).

Here, however, the ALJ's decision provides no explanation as to why a mental RFC involving "simple, routine, and repetitive tasks" which prohibits production pace work but allows for "<u>goal oriented work</u>" (Tr. 26 (emphasis added)) sufficiently accounts for Plaintiff's moderate limitation in concentration, persistence, or pace (<u>see</u> Tr. 25). At step three, the only support the ALJ offered for the moderate limitation consisted of the observation that, "[d]uring an evaluation, [Plaintiff] reported having some problems with decreased concentration, but records have not shown that and it was noted that [Plaintiff's] problems with depression most likely stem from her physical problems." (<u>Id.</u>) Regardless of whether Plaintiff's moderate concentration deficits arise from her mental or physical problems, the ALJ did not explain why Plaintiff remained able to perform goal-oriented work despite moderate limitation in her ability stay on task.

Moreover, the ALJ's remark in the RFC discussion that Plaintiff "was able to attend college for two years, which would not indicate a problem with her concentration, focus or memory" (Tr. 31) similarly misses the mark. That Plaintiff possessed sufficient ability to stay on task to attend two years of post-secondary executive secretary classes <u>in 1985</u>, <u>25 years prior to her amended alleged onset date</u> (<u>see</u> Tr. 46, 172), provides no

18

support for a conclusion that Plaintiff's could sustain concentration during the relevant period in this case. Furthermore, although the ALJ did not expressly weigh the opinions of the state agency mental consultants (see Tr. 31), he clearly did not credit those consultants' findings with respect to Plaintiff's concentration limitations: both consultants found Plaintiff's depression <u>non-severe</u> and assessed <u>no</u> limitation in concentration, persistence, or pace and, for that reason, did not even evaluate Plaintiff's mental RFC (see Tr. 71, 85). As a result, without further explanation, the ALJ's decision does not provide "an accurate and logical bridge," <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000), between the ALJ's conclusion that Plaintiff suffered moderate concentration, persistence, and pace deficits and the ALJ's decision that Plaintiff could perform simple, goal-oriented tasks in the work place. Under these circumstances, the Court should remand for further administrative proceedings consistent with <u>Mascio</u>.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings as to why, for purposes of establishing an RFC, restricting Plaintiff to simple, routine, and repetitive

19

tasks not involving production work but allowing for goal-oriented work adequately accounts for her moderate limitation in concentration, persistence, or pace (or, alternatively, whether additional restrictions should apply and/or whether jobs that can accommodate any such additional restrictions exist in substantial numbers).  As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 18) should be granted in part (i.e., to the extent it requests remand) and Defendant's Motion for Judgment on the Pleadings (Docket Entry 21) should be denied.


                                        /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                              **United States Magistrate Judge**

May 2, 2016